# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

## NOTICE OF ISSUANCE OF MANDATE

DATE:   January 7, 2008

TO:     Norbert G. Jaworski
        United States District Court
        Southern District of Illinois
        301 W. Main Street
        Benton, IL  62812
        USA

FROM:   Clerk of the Court

RE:     07-1510
        USA v. Stein, Ryan J.
        05 CR 40033, J. Phil Gilbert, Judge

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

```
[ ] No record filed
[X] Original record on appeal consisting of:
```

**ENCLOSED:**                                           **TO BE RETURNED AT LATER DATE:**

| | | |
|---|---|---|
| [1] | Volumes of pleadings | [ ] |
| [ ] | Volumes of loose pleadings | [ ] |
| [5] | Volumes of transcripts | [ ] |
| [1] | Volumes of exhibits | [ ] |
| [ ] | Volumes of depositions | [ ] |
| [1] | In Camera material | [ ] |
| [ ] | Other_____ | [ ] |

Record being retained for use                           [ ]
in Appeal No. _____

Copies of this notice sent to:          Counsel of record
[X]     United States Marshal
[X]     United States Probation Office

**NOTE TO COUNSEL:**
If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

Date: _1-8-08_____                    _____
(1071-120397)                              Deputy Clerk, U.S. District Court

*RECEIVED JAN 0 8 2008 CLERK, U.S. SOUTHERN DISTRICT COURT BENTON, ILLINOIS*

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

JUDGMENT- WITHOUT ORAL ARGUMENT



Date: December 14, 2007

BEFORE:   Honorable RICHARD A. POSNER, Circuit Judge

          Honorable DIANE P. WOOD, Circuit Judge

          Honorable TERRENCE T. EVANS, Circuit Judge

No. 07-1510

UNITED STATES OF AMERICA,
       Plaintiff - Appellee
  v.

RYAN J. STEIN,
       Defendant - Appellant

Appeal from the United States District Court for the
Southern District of Illinois
No. 05 CR 40033, J. Phil Gilbert, Judge

    The judgment of the District Court is AFFIRMED,
in accordance with the decision of this court entered on this date.


(1060-110393)

**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

CERTIFIED COPY

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted December 11, 2007*
Decided December 14, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 07-1510

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois |
| *v.* | No. 05 CR 40033 |
| RYAN J. STEIN, <br> *Defendant-Appellant.* | J. Phil Gilbert, <br> *Judge.* |

### ORDER

A jury found Ryan Stein guilty of conspiring to manufacture and distribute more than 50 grams of a substance containing methamphetamine. *See* 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B). At sentencing the district court found, over Stein's objection, that he was accountable for approximately 900 grams of methamphetamine. Because Stein had a prior drug-felony conviction, the court's calculation triggered a mandatory minimum prison sentence of 20 years. *See id.*

---

* This appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

No. 07-1510 Page 2

§ 841(b)(1)(A). Stein's only argument on appeal is that the evidence underlying the court's drug-quantity calculation is unreliable. Because the court did not clearly err in its drug-quantity calculation, we affirm his sentence.

Twenty-eight government witnesses testified at Stein's trial about his role in producing, using, and distributing methamphetamine. Shane Clutts, who had pleaded guilty to the conspiracy, testified that at one point Stein was his "main partner." Clutts said that he and Stein were on a meth-cooking "spree" before being arrested in May 2004 for stealing lithium batteries (a methamphetamine precursor) from a Wal-Mart store. During that arrest, officers searched Stein's truck and found ephedrine pills and other materials commonly used to produce methamphetamine. Clutts testified that after their arrest, he and Stein cooked methamphetamine together at least 20 more times, with each "cook" yielding between 5 to 15 grams. Clutts said that their post-arrest yields were smaller than the amounts they produced before their arrest.

Kevin Bruce—who had pleaded guilty to being a part of a separate methamphetamine-manufacturing conspiracy—testified that after he met Stein in late 2003, they cooked methamphetamine together five times. They used two jars each time, producing 14 to 18 grams per jar. Bruce testified that on another occasion he saw Stein weigh out 18 grams of methamphetamine, which Stein planned to sell to pay back a debt he owed Bruce.

The jury found Stein guilty and returned a special verdict form stating that the government proved beyond a reasonable doubt that the conspiracy involved in excess of 50 grams of a substance containing methamphetamine. A probation officer prepared a PSR recommending that the district court hold Stein accountable for approximately 900 grams. She based her calculation in part on a statement that Rodney Kimes—who did not testify at Stein's trial—provided to police. Kimes said that he saw Stein cook methamphetamine 40 to 50 times. He said that on ten occasions Stein produced seven grams, and the remaining times he produced 15 to 18 grams. Kimes also said that he once saw Stein with four jars, each containing 15 grams of methamphetamine. The probation officer—using the low end of these estimates—thus determined that Kimes had seen Stein with 580 grams of methamphetamine.

The probation officer also attributed 320 grams to a statement that Clutts gave to police. Clutts said that he cooked methamphetamine with Stein in two different time periods: in the first period they cooked together 20 to 40 times, producing 8 to 20 grams each time, and in the second, they cooked together 20 times, producing 8 to 10 grams each time. Adding together the amounts described in Kimes's and Clutts's statements, the probation officer recommended that the court hold Stein accountable for approximately 900 grams of methamphetamine.

No. 07-1510                                                                                           Page 3

Stein filed written objections to the probation officer's calculation, stating only that "[t]here was absolutely no credible evidence to suggest [Stein]'s role in methamphetamine cooks involv[ed] this quantity." Stein presented no evidence at the sentencing hearing to support his objection. But the government presented the testimony of Detective Michael Ryan—the officer who took Kimes's and Clutts's statements. Ryan confirmed that their statements were consistent with the probation officer's report. He testified that Kimes's statement also was consistent with information he gathered through his investigation. In particular, Ryan said that Kimes provided details about Stein's attempt to steal anhydrous from a farm, and Kimes's description matched a sheriff's report of the incident.

The district court found that Clutts's and Kimes's statements respectively showed that 320 and over 400 grams of methamphetamine were attributable to Stein as relevant conduct. It also found that Bruce's trial testimony showed that Stein was accountable for an additional 158 grams. Because the offense involved at least 500 grams of methamphetamine, but less than 1.5 kilograms, the court calculated a base offense level of 32. *See* U.S.S.G. § 2D1.1(c). Applying the base offense level against Stein's criminal history category, the court determined that the guidelines range was 151 to 188 months. But because Stein had a previous conviction for manufacturing methamphetamine, the court concluded that it was bound by the statutory minimum of 20 years. *See* 21 U.S.C. §§ 841(b)(1)(A); 851. Accordingly, the court sentenced Stein to 240 months' imprisonment.

Stein argues that the district court erred in crediting the statements of Kimes, Clutts, and Bruce because their statements were unreliable. Stein has not specified what he thinks the appropriate calculation is, other to argue that it should be less than 500 grams—the threshold triggering the 20-year minimum. We review a district court's findings of relevant conduct, including its drug-quantity calculations, only for clear error. *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007).

As an initial matter, we note that Stein introduced no evidence at sentencing to support his argument that Kimes's and Clutts's statements as reported in the PSR are insufficiently reliable. At sentencing the government has the burden "to prove the amount of drugs attributable to a defendant by a preponderance of the evidence." *Artley*, 489 F.3d at 821. But the district court may base its calculation on the PSR as long as its information is sufficiently reliable, and it is the defendant's burden to show that the PSR is unreliable. *Id.* at 821; *United States v. Romero*, 469 F.3d 1139, 1147 (7th Cir. 2006). Where a defendant does not provide any evidence that casts doubt on the PSR, the court may rely on it entirely. *Artley*, 489 F.3d at 821; *United States v. Taylor*, 72 F.3d 533, 547 (7th Cir. 1995). Here, Stein offered no evidence at all to support his contention that the PSR was

No. 07-1510 Page 4

unreliable, nor did he even explain at sentencing why he thought it was unreliable. This failure alone is enough to doom Stein's appeal. But there is more.

The statements as reported in the PSR bear "sufficient indicia of reliability" to support their "probable accuracy." See U.S.S.G. § 6A1.3(a); *United States v. Wilson*, 502 F.3d 718, 721-22 (7th Cir. 2007). Detective Ryan testified that the PSR accurately reported Kimes's and Clutts's statements. Stein complains that Ryan's testimony is hearsay, but that is a non-starter; a sentencing court "clearly errs by considering hearsay evidence only if the evidence was devoid of any indicia of reliability." *United States v. Sanchez*, No. 06-3852, 2007 WL 3036808, at *5 (7th Cir. Oct. 19, 2007). The record contains substantial corroboration for Kimes's statements. For example, Ryan confirmed that Kimes's description of Stein's attempt to steal anhydrous is consistent with an independent sheriff's report describing the incident. Numerous trial witnesses confirmed Kimes's statement that Stein was a frequent producer of methamphetamine, and one witness confirmed that Kimes was helping Stein cook methamphetamine. Moreover, Clutts, Bruce, and two other witnesses corroborated Kimes's report that Stein produced amounts near the range of 15 to 18 grams of methamphetamine during each cooking session.

Stein tries to cast doubt on Kimes's statements by labeling them "implausible" and by pointing out that Kimes did not specify that he cooked methamphetamine with Stein during the period charged in the indictment. But Kimes said that he met Stein during the three or four months leading up to his May 2004 interview, so the interactions he described must have occurred within the relevant period. And he has not explained why it was implausible for Stein to produce upward of 500 grams of methamphetamine in a three- to four-month period when several witnesses testified that he had many people gathering pseudoephedrine pills and other precursors for him.

Because Kimes saw Stein with more than 500 grams of methamphetamine, his statement alone is enough to trigger the 20-year mandatory minimum. See 21 U.S.C. § 841(b)(1)(A). Stein nonetheless mounts a cursory challenge to the district court's decision to credit Clutts's statement and Bruce's testimony, which, according to him, lack clarity. But both Clutts and Bruce gave enough detail for the court to conclude that they were telling the truth. Clutts specified—both in his statement to Ryan and in his trial testimony—that he cooked methamphetamine with Stein around 20 times during two different time periods before and after their 2004 arrest. Several trial witnesses confirmed that Clutts and Stein cooked methamphetamine together. Bruce specified that he met Stein around November 2003, and he said that each time they cooked methamphetamine together they did so at a residence "on Giant City blacktop" that Stein shared with someone named Randy Runion. Stein simply has not articulated a persuasive reason why we would

No. 07-1510 Page 5

second-guess the district court's decision to credit Clutts's and Bruce's testimony. *See United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004).

For these reasons, the judgment of the district court is AFFIRMED.